721 A.2d 312 (1998)
317 N.J. Super. 92
John L. DAVIS, Plaintiff-Respondent,
v.
DND/FIDOREO, INC. and Surrey Downs/Fidoreo, Inc., Defendants-Appellants.
Superior Court of New Jersey, Appellate Division.
Argued December 1, 1998.
Decided December 24, 1998.
*313 Stuart J. Glick, Newark, for defendants-appellants (Sills, Cummis, Zuckerman, Radin, Tischman, Epstein & Gross, attorneys; Mr. Glick, of counsel; Donna Libretti Cooke and Daniel P. Silberstein, Roseland, on the brief).
Carol S. Harding, Westmont, for plaintiff-respondent (Earp, Cohn & Pendery, attorneys; Ms. Harding and Anne C. Singer, on the brief).
Before Judges KEEFE, EICHEN, and COBURN.
The opinion of the court was delivered by COBURN, J.A.D.
Davis agreed to purchase a condominium development for $1,370,000 and paid a deposit of $137,000. After Davis failed to close title, the deposit was retained, pursuant to the contract, as liquidated damages. Over two years later, Davis filed suit for return of the deposit. A sheriff's officer served defendants by giving copies of the summons and complaint to an assistant manager of the First Union National Bank, defendants' parent company, at a branch office of the bank, which served as the principal office of the subsidiary companies. Apparently, the assistant manager, whose job included receiving subpoenas for the bank, failed to forward the suit papers to the appropriate person. As a result, no answer was filed and Davis obtained a $137,000 default judgment. On learning of the suit, defendants promptly moved to vacate the default judgment under *314 R. 4:50-1(a) and (f). The Law Division judge denied the motion on the grounds that the service of process was valid and there was neither excusable neglect nor any other reason justifying relief from the judgment. Although we agree with the judge's conclusions regarding the validity of the service of process and the absence of excusable neglect, we reverse and remand for further proceedings because there were other reasons requiring vacation of the judgment and because plaintiff's rights can be adequately and fairly protected by an award of counsel fees and costs, plus, if appropriate, the posting of security for any reasonably potential judgment.

I.
In 1993, Davis agreed to purchase a condominium development from defendant DND/Fidoreo, Inc. ("DND"), a subsidiary of First Union National Bank, for $1,370,000. If Davis breached the agreement, DND was entitled to retain the $137,000 deposit as liquidated damages. Davis ignored a time of the essence closing date scheduled for March 29, 1994. After DND had retained the deposit for over two years without objection, Davis filed suit against both defendants, claiming entitlement to the deposit. Davis concedes that there may be meritorious defenses. Before institution of this action, DND was merged into defendant Surrey Downs/Fidoreo, Inc. ("Surrey"), another wholly-owned subsidiary of the bank. Both defendants were created by the bank solely for the purpose of holding and selling property the bank had obtained by foreclosure. On April 14, 1995, the property was sold for $1,900,000.
On July 9, 1996, an Essex County Sheriff's Officer served copies of plaintiff's summons and complaint on Sandra Brown at 550 Broad Street, Newark, the principal office of defendants and a branch office of their parent company, First Union National Bank. The returns of service designated Brown, an assistant manager of the bank, as the "managing agent" of DND and as "other" with respect to Surrey. No answer having been filed, Davis obtained a default judgment on December 17, 1996. Defendants learned of the judgment in April 1997 when they received a notice of deposition in aid of execution. They promptly moved for vacation of the judgment pursuant to R. 4:50-1(a) and (f).
In support of defendants' motion, Sandra Brown certified these facts: when process was served she worked for the bank and had no relationship to the defendants; and although one of her functions as assistant manager of the bank's Special Investigations Department was to respond to "subpoena[s] duces tecum served on the Bank," she could "not recall ever representing [herself] as" the "managing agent" of either defendant. However, she did not deny receiving the process from the sheriff's officer, nor did she even deny telling him that she was the defendants' managing agent. She also did not address what, if anything, she had done with the suit papers.
Surrey's corporate secretary provided a certification noting the merger of defendants in 1995, Brown's lack of relationship to them, and her own lack of knowledge of the lawsuit before she was asked to provide the certification in support of defendants' motion to vacate the judgment.
Richard Niemiec, an attorney employed by the bank, certified in entirely general terms that as a result of the bank's merger with First Fidelity Bank on January 1, 1996, the bank "experienced a major re-engineering and restructuring of its operations that was felt in all branches across the country, including the branch located at 550 Broad Street...." He also certified, "To date, we still have not found the original summons and complaint that plaintiff allegedly served upon Sandra Brown in July 1996."

II.
Service of process was proper in this case. Defendants' technical arguments to the contrary overlook a basic proposition enunciated by the United States Supreme Court. The only constitutional requirement of service of process is "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Central *315 Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865, 873 (1950). Our Supreme Court, after endorsing that proposition in O'Connor v. Altus, 67 N.J. 106, 126-27, 335 A.2d 545 (1975), went on to approve of these more specific propositions. Delivery of process need not be accomplished during a face-to-face meeting with the person upon whom service is to be effected; it is sufficient if the sheriff's officer serves a person whom he can reasonably expect will deliver the process to the appropriate person. Id. at 127-28, 335 A.2d 545.
The O'Connor Court also looked with favor on this two-pronged test for the validity of service on a representative:
[T]he representative [served] should be so integrated with the organization that he will know what to do with the papers and that he or she should stand in a position as to render it fair, reasonable and just to imply the authority to receive service.

[Id. at 128, 335 A.2d 545.]
In its use of the word "representative," the O'Connor Court might be understood to have been referring only to an employee of the company being served. However, in Trustees of the Local 478 Trucking and Allied Industries Pension Fund v. Baron Holding Corp., 224 N.J.Super. 485, 540 A.2d 1307 (App.Div.1988), we read O'Connor more broadly. The sheriff's officer served a receptionist employed by Baron Motor Carriers with process directed to Baron Holding Corporation, its landlord. Id. at 489, 540 A.2d 1307. Both entities were closely held family corporations located in the same building. Id. at 487, 540 A.2d 1307. The receptionist had indicated to the officer that she was authorized to accept service. Id. at 489, 540 A.2d 1307. We said:
In this case, the [sheriff's officer] did not have "to imply" that [the receptionist] had authority to receive service. The unrebutted proof shows that [she] represented to the deputy that she was authorized to accept service. Also, the office was that of Baron, Jr., who was also president of Baron Holding. Proper service ... was made upon the corporation ....

[Id. at 490, 540 A.2d 1307.]
Corporations, being entities that should expect to be sued from time to time, have an obligation to institute procedures within their organization for receiving and responding to law suits. Cf. Mancini v. EDS ex rel. New Jersey Auto. Full Ins. Underwriting Assoc., 132 N.J. 330, 335-36, 625 A.2d 484 (1993). In the instant case, the defendants failed to prove that they had any such procedures in place on the date of service. As wholly-owned subsidiaries of the bank in whose office they were located, they should not be allowed to complain of service made at that address, on an assistant bank manager, who regularly receives subpoenas duces tecum for the bank and who represents that she is authorized to receive service as the subsidiaries' managing agent. We note in this regard that Brown's certification that she could not recall telling a sheriff's officer that she was managing agent of the defendants is not a denial of the contrary report in the return of service.
In sum, we are satisfied that under the circumstances of this case the notice given was reasonably calculated to advise defendants of the pendency of the action. Furthermore, defendants have never sought a dismissal of the action, the appropriate relief when there is a claim of improper service. See Baron Holding Corp., supra, 224 N.J.Super. at 488, 540 A.2d 1307. Therefore, we turn to defendants' primary claim that the judge erred in denying their motion to vacate the default judgment.

III.
A motion to vacate a default judgment "should be viewed with great liberality, and every reasonable ground for indulgence is tolerated to the end that a just result is reached." Marder v. Realty Constr. Co., 84 N.J.Super. 313, 319, 202 A.2d 175 (App.Div.), aff'd, 43 N.J. 508, 205 A.2d 744 (1964). Although the decision is generally left in the sound discretion of the trial court, that court must recognize that "[a]ll doubts ... should be resolved in favor of the parties seeking relief." Mancini, supra, 132 N.J. at 334, 625 A.2d 484 (citing Arrow Mfg. Co. v. Levinson, 231 N.J.Super. 527, 534, 555 A.2d 1165 (App. Div.1989)).
*316 Defendants claimed they were entitled to relief from the judgment because of excusable neglect, R. 4:50-1(a), or, in the alternative, because the circumstances were exceptional, R. 4:50-1(f).
The judge properly rejected the claim of excusable neglect under subsection (a). Pursuant to Mancini, the corporate defendants were required to have reasonable procedures in place for the receipt and processing of civil complaints brought to their principal place of business. Their neglect in that regard was inexcusable. As the Court said in Mancini, "Carelessness may be excusable when attributable to an honest mistake that is compatible with due diligence or reasonable prudence." 132 N.J. at 335, 625 A.2d 484. The lack of appropriate procedures for receiving and processing civil complaints delivered by sheriff's officers to their principal place of business reflected neither due diligence nor reasonable prudence.
Although defendants failed to prove excusable neglect, we are satisfied that they were entitled to relief under subsection (f). The essence of subsection (f) is "`its capacity for relief in exceptional situations. And in such exceptional cases its boundaries are as expansive as the need to achieve equity and justice.'" Palko v. Palko, 73 N.J. 395, 398, 375 A.2d 625 (1977) (quoting Court Inv. Co. v. Perillo, 48 N.J. 334, 341, 225 A.2d 352 (1966)).
Because defendants sought relief from a default judgment, their application should have been treated indulgently under Marder, supra. Furthermore, even though the service was valid, there was undeniably doubt about defendants' actual receipt of the process; and, in that event, where the relief sought is not dismissal of the complaint but vacation of the default judgment, we have previously said that if "there is at least some doubt as to whether the defendant was in fact served with process, we think the circumstances require a more liberal disposition of" the motion. Goldfarb v. Roeger, 54 N.J.Super. 85, 92, 148 A.2d 189 (App.Div. 1959); see also Garley v. Waddington, 177 N.J.Super. 173, 181, 425 A.2d 1084 (App.Div. 1981). In that regard, even though the neglect was inexcusable, the absence of evidence establishing willful disregard of the court's process is an important consideration. Mancini, supra, 132 N.J. at 336, 625 A.2d 484.
In failing to give appropriate deference to the principles set forth in Palko, Marder, Goldfarb, and Mancini, the Law Division judge mistakenly exercised his discretion. R. 4:50-1(f) calls for the exercise of sound discretion, "guided by equitable principles, and in conformity with the prescription that `any doubt should be resolved in favor of the application to set aside the judgment to the end of securing a trial upon the merits.' " Goldfarb, supra, 54 N.J.Super. at 92, 148 A.2d 189 (quoting Loranger v. Alban, 22 N.J.Super. 336, 342, 92 A.2d 77 (App.Div. 1952)). Generally, the decision on a motion to vacate a default judgment is within the sound discretion of the trial court, but where, as here, there is a mistaken exercise of that discretion, reversal is in order. Housing Auth. v. Little, 135 N.J. 274, 283-84, 639 A.2d 286 (1994).

IV.
When relief is given from a default judgment, the court is required to do so "upon such terms as are just." R. 4:50-1. Two concerns arise: providing reasonable security to the plaintiff; and providing compensation to the plaintiff for the fees and costs incurred in obtaining and defending the default judgment.
With respect to the first concern, if the circumstances indicate that collection of the judgment may be rendered doubtful by setting it aside, most states will permit the lien of the judgment and any execution thereon to stand as security. Annotation, Duty of Court Upon Opening Default to Defer Vacation of Judgment or Order Until Result of Trial on Merits, 98 A.L.R. 1380, 1381-85 (1935). That approach has been followed in this state. Reilly v. Perehinys, 33 N.J.Super. 69, 76, 109 A.2d 449 (App.Div.1954); Goldfarb, supra, 54 N.J.Super. at 93, 148 A.2d 189.
Generally, absent extraordinary circumstances, the posting of a bond has been viewed not as a plaintiff's right, but as a *317 defendant's option if he preferred to have a default judgment vacated when a court had directed that the judgment stand as a lien. See Reilly, supra, 33 N.J.Super. at 76, 109 A.2d 449. A number of state courts have expressly rejected imposition of a judgment bond at plaintiff's request because, absent unusual circumstances, it is too severe a sanction. Kirkwood v. Superior Court, 253 Cal.App.2d 198, 61 Cal.Rptr. 316, 318 (Ct. App.1967); Lipsig v. Shamy, 86 A.D.2d 520, 445 N.Y.S.2d 755, 756 (App.Div.1982). Those principles were followed in John Reiner & Co. v. Dorsey Roofing Co., 187 N.J.Super. 51, 53-54, 453 A.2d 570 (Law Div.1982), and Wokan v. Alladin Int'l, Inc., 485 F.2d 1232, 1235 (3d Cir.1973).
In the instant case, the trial court's judgment required defendants to post a Letter of Credit in the amount of the judgment, plus interest, but provided that "[i]f defendants prevail on appeal, the Letter of Credit may be revoked and shall be returned to defendants." Since on this record we cannot tell whether unusual circumstances are present, which might place in doubt plaintiff's ability to collect on the judgment, we will require the Letter of Credit remain in effect until further order of the trial court.
With regard to the second concern, plaintiff's incurrence of fees and costs resulting from defendants' inexcusably neglectful failure to file a timely answer to the complaint, we adopt the approach of the trial court in John Reiner & Co., supra, 187 N.J.Super. at 54-55, 453 A.2d 570, and in the circumstances of this case will require that, as a condition of relief from the judgment, defendants shall reimburse plaintiff for the attorneys' fees and court costs incurred in obtaining the default judgment and in opposing its vacation in the trial court and in this court on the appeal. This approach accords with the general practice throughout the United States, C.T. Drechsler, Annotation, Conditioning the Setting Aside of a Judgment or Grant of a New Trial on Payment of Opposing Attorney's Fees, 21 A.L.R.2d 863, 865-66 (1952), and is supported by R. 1:2-4; Tenby Chase Apartments v. New Jersey Water Co., 169 N.J.Super. 55, 62, 404 A.2d 309 (App.Div.1979); and Maurio v. Mereck Constr. Co., 162 N.J.Super. 566, 570, 394 A.2d 110 (App.Div.1978). The rule and those cases demonstrate that the limitations in R. 4:42-9 regarding when counsel fees may be awarded are inapplicable to the circumstances of the instant case. However, we note that there might be some circumstances in which an award of attorneys' fees and costs would be inappropriate.
In summary, although we uphold the trial judge's determinations that service of process was proper and that excusable neglect was absent, we reverse because the refusal to give relief from the judgment under R. 4:50-1(f) was beyond a reasonable exercise of discretion and constituted legal error. The security posted by defendants shall remain in effect pending further determination of the trial court, with respect to the continuing need, if any, for such security. Relief from the judgment shall be conditioned on reimbursement of plaintiff's counsel fees and costs, and the application in that regard shall be made to the trial court, which shall determine all such fees and costs, including those incurred with respect to this appeal. See R. 2:11-4(c).
Reversed and remanded for further proceedings consistent with this opinion.